UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s)**: 14-42                                         Caption [use short title]

**Motion for**: Preliminary Injunction

ACLU v. Clapper

Set forth below precise, complete statement of relief sought:

Preliminary injunction (i) barring the government, during the pendency of this suit, from collecting Plaintiffs' call records under the call-records program; (ii) requiring the government, during the pendency of this suit, to quarantine all of Plaintiffs' call records already collected under the program; and (iii) prohibiting the government, during the pendency of this suit, from querying metadata obtained through the program using any phone number or other identifier associated with them.

**MOVING PARTY**: ACLU et al.                    **OPPOSING PARTY**: Clapper et al.
☑ Plaintiff     ☐ Defendant
☐ Appellant/Petitioner     ☐ Appellee/Respondent

**MOVING ATTORNEY**: Jameel Jaffer              **OPPOSING ATTORNEY**: David Jones
[name of attorney, with firm, address, phone number and e-mail]

ACLU, 125 Broad Street, 18th Floor             U.S. Attorney's Office for the SDNY, 86 Chambers Street, 3rd Flr.
New York, NY 10004                             New York, NY 10007
212-519-7814 / jjaffer@aclu.org                212-637-2739 / david.jones6@usdoj.gov

Court-Judge/Agency appealed from: S.D.N.Y - Hon. William H. Pauley III

**Please check appropriate boxes:**                    **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):    Has request for relief been made below?           ☐ Yes ☐ No
☑ Yes ☐ No (explain):                                                  Has this relief been previously sought in this Court?  ☐ Yes ☐ No
                                                                       Requested return date and explanation of emergency:
Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

Is oral argument on motion requested?   ☑ Yes ☐ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☑ Yes ☐ No  If yes, enter date: September 2, 2014 (already heard)

**Signature of Moving Attorney:**
/s/ Jameel Jaffer      Date: July 14, 2015      Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

# 14-42

IN THE

## United States Court of Appeals
FOR THE
### Second Circuit

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION,

*Plaintiffs–Appellants,*

— v. —

JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; CHARLES T. HAGEL, in his official capacity as Secretary of Defense; ERIC H. HOLDER, in his official capacity as Attorney General of the United States; and JAMES B. COMEY, in his official capacity as Director of the Federal Bureau of Investigation,

*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## MOTION FOR PRELIMINARY INJUNCTION

Christopher T. Dunn
Arthur N. Eisenberg
New York Civil Liberties Union
  Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Jameel Jaffer
Alex Abdo
Patrick Toomey
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
jjaffer@aclu.org

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Motion for Preliminary Injunction ............................................................................. 1

    I.    Developments since this Court's May 7 ruling. ........................................ 2

    II.    The urgent need for injunctive relief. ....................................................... 6

        a.    Likelihood of success on the merits. ................................................ 7

        b.    Irreparable injury. ............................................................................ 13

        c.    Public interest and the balance of equities ...................................... 14

Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015) .......................................... 1, 7, 11, 12

*Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013) ............................................. 13

*Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456 (6th Cir. 1999) ........................................................................................................ 14

*Riley v. California*, 134 S. Ct. 2473 (2014) .............................................................. 13

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012) ....................................... 9

*United States v. Gonzales*, 520 U.S. 1 (1997) ............................................................ 9

**Statutes**

USA FREEDOM Act of 2015, Pub. L. 114-23, ___ Stat. ___ (2015) ............. 3, 4, 8

**Other Authorities**

161 Cong. Rec. S3331-02 (daily ed. May 31, 2015) ................................................ 11

H. Rep. No. 114-109 (2015) ................................................................................. 9, 11

Opinion & Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015) .... passim

Primary Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015) .............. 5

## Motion for Preliminary Injunction

On May 7, this Court ruled that the National Security Agency's call-records program is unlawful, explaining that Section 215 of the Patriot Act does not authorize bulk collection, and that if Congress had intended to authorize the NSA to collect sensitive records about hundreds of millions of Americans, it would have done so explicitly. *ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015). Because Section 215 was scheduled to sunset on June 1, however, this Court declined to enjoin the surveillance, deeming it "prudent to pause to allow an opportunity for debate in Congress that may (or may not) profoundly alter the legal landscape." *Id.* at 826. The congressional debate is now over, and after exhaustive consideration of the issue, Congress has declined to expand the government's surveillance authority. Yet today the government is continuing—after a brief suspension—to collect Americans' call records in bulk on the purported authority of precisely the same statutory language this Court has already concluded does not permit it.

Accordingly, Plaintiffs respectfully ask that the Court now grant the preliminary relief it refrained from granting in its earlier decision. Specifically, Plaintiffs ask that the Court issue a preliminary injunction (i) barring the government, during the pendency of this suit, from collecting Plaintiffs' call records under the NSA's call-records program; (ii) requiring the government, during the pendency of this suit, to quarantine all of Plaintiffs' call records already

collected under the program; and (iii) prohibiting the government, during the pendency of this suit, from querying metadata obtained through the program using any phone number or other identifier associated with them. Plaintiffs also ask that the Court, after the entry of preliminary relief, remand so that the district court can expeditiously consider the appropriate scope of final relief, including but not limited to an injunction that would require the government to end the program and purge records collected unlawfully.[1]

## I. Developments since this Court's May 7 ruling.

Since the Court issued its opinion, there have been several significant developments relating to the surveillance challenged here. The upshot of those developments, detailed below, is that: the government is collecting call records in

---

[1] On June 9, this Court directed the parties to file by July 24 "supplemental briefs, not to exceed twenty pages in length, regarding the effect of the USA FREEDOM Act on the above-captioned case, and in particular whether any or all of the claims asserted by the plaintiffs–appellants have been rendered moot as a result of that legislation." Order, *ACLU v. Clapper*, ECF No. 190 (2d Cir. June 9, 2015). The case is not moot. The government is engaged in the same surveillance it was engaged in before the passage of the Act, and on the basis of exactly the same statutory language. Moreover, Plaintiffs' expungement claim will survive even if the government ceases the surveillance. *See* JA027 (Compl. at 10) (requesting that the court "[o]rder Defendants to purge from their possession all of the call records of Plaintiffs' communications in their possession collected pursuant to the [call-records program]"). As discussed below, the government has suggested that it intends to retain and use the records it has collected unlawfully.

Because this filing addresses the issue of mootness, Plaintiffs respectfully ask that the Court treat this filing as satisfying the Court's request for supplemental briefing.

bulk under the same statutory authority this Court previously held did not permit it; the government intends to continue this surveillance for at least 180 days; and the government apparently intends to retain and use the fruits of its unlawful surveillance indefinitely.

*First*, on June 1, the authority that had been granted by Section 215 of the Patriot Act expired after the Senate declined to pass a bill that would have temporarily extended the authority without modification. Reuters, *Senate Lets NSA Spy Program Lapse, at Least for Now*, Reuters, June 1, 2015, http://reut.rs/1GcLAOs.

*Second*, on June 2, President Obama signed into law the USA FREEDOM Act of 2015, Pub. L. 114-23, ___ Stat. ___ (2015) (hereinafter, "USA Freedom Act"). As relevant here, the legislation provides that, after a period of 180 days, the government will be permitted to collect call detail records under 50 U.S.C. § 1861 only if it meets certain "additional requirements." USA Freedom Act § 101; *see also id*. § 101–103 (setting out scheme under which government will be permitted to access call records, with particularized suspicion, through targeted demands). For an initial 180-day period, however, the legislation leaves in place—unaltered—the statutory provision that the government unlawfully invoked to justify the collection of call records in bulk for more than seven years. *See id*. § 109(a) (providing that "[t]he amendments made by sections 101 through 103

3

shall take effect on the date that is 180 days after the date of the enactment of this Act"); *id*. § 109(b) ("[n]othing in this Act shall be construed to alter or eliminate the authority of the Government to obtain an order under [50 U.S.C. § 1861] as in effect prior to the effective date described in subsection (a) during the period ending on such effective date").

*Third*, on the same day that President Obama signed the USA Freedom Act into law, the government asked the Foreign Intelligence Surveillance Court ("FISC") to allow it to resurrect the call-records program. *See* Mem. of Law, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 2, 2015) (hereinafter, "June 2 Application").[2] The government argued that "the version of Section 1861 in effect" was "in pertinent part, the same version in effect at the time the [FISC] approved the Government's" earlier applications for authority to collect call records in bulk. June 2 Application at 4. It argued that Congress's decision to delay by 180 days the imposition of the "additional requirements" relating to the collection of call records constituted an implicit endorsement of bulk collection during that period and reflected a legislative intent to "allow for the orderly termination" of that collection. *Id*. at 5. The government also contended that this Court's May 7 ruling as to the lawfulness

---

[2] The June 2 Application is available at https://s3.amazonaws.com/s3.documentcloud.org/documents/2094693/misc-15-01-memorandum-of-law.pdf.

of the call-records program was incorrect, and it reminded the FISC "that Second Circuit rulings do not constitute controlling precedent for this Court." *Id*. at 7.

*Fourth*, on June 29, a judge of the FISC granted the June 2 Application. Opinion & Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015) (hereinafter, "June 29 FISC Opinion"); *see also* Primary Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, No. BR 15-75 (F.I.S.C. June 29, 2015).[3] The court reasoned that the USA Freedom Act had effectively restored, for 180 days, the version of section 1861 that had been in effect immediately before the June 1 sunset. June 29 FISC Opinion at 9. It also reasoned that, by delaying for 180 days the implementation of the "additional requirements" for collection of call records, Congress had implicitly "authorized bulk acquisition of call detail records during the interim 180-day period," *id*. at 10, and ratified earlier decisions of the FISC authorizing bulk collection, *id*. at 11, 18. The FISC specifically rejected the reasoning of this Court's May 7 ruling, writing that it rested "[t]o a considerable extent . . . on mischaracterizations of how [the call-records program] works and on understandings that, if they had once been

---

[3] The June 29 FISC Opinion is available at http://www.fisc.uscourts.gov/sites/default/files/BR%2015-75%20Misc%2015-01%20Opinion%20and%20Order_0.pdf.

The June 29 Primary Order is available at http://www.fisc.uscourts.gov/sites/default/files/BR%2015-75%20Primary%20Order%20%28redacted%29%20.pdf.

correct, have been superseded" by the USA Freedom Act. *Id*. at 16. On the issue of the constitutionality of the call-records program, the FISC judge reaffirmed earlier FISC opinions holding that the issue was controlled by *Smith v. Maryland*, 442 U.S. 735 (1979), and that the call-records program was, therefore, consistent with the Fourth Amendment. *Id*. at 19–25.[4]

*Fifth*, on June 19, the government filed a supplemental brief in *Smith v. Obama*, No. 14-35555 (9th Cir., oral argument held Dec. 8, 2014), another challenge to the call-records program, arguing that expungement would not be available as a matter of law even to a plaintiff who established that the call-records program was unconstitutional, Suppl. Br. for Appellees at 6, *Smith v. Obama*, No. 14-35555 (9th Cir. June 19, 2015); that even if courts possessed equitable power to require expungement, they should not exercise it with respect to records collected under the call-records program, *id*. at 8; and that there is no legal bar to the government's retention and use of the fruits of unlawful searches and seizures, *id*. at 7.

## II. The urgent need for injunctive relief.

In its May 7 ruling, this Court held that Plaintiffs had "shown a likelihood—indeed, a certainty—of success on the merits of at least their statutory claims," but it declined to issue preliminary injunctive relief at that time, noting that Section

---

[4] The FISC did not address the constitutionality of the program under the First Amendment. To Plaintiffs' knowledge, it has never done so.

215 was "scheduled to expire in just several weeks" and that congressional action (or inaction) could alter the legal landscape. *Clapper*, 785 F.3d at 826. The Court contemplated, in particular, the possibility that Congress would expressly "expand[]" Section 215 "to authorize the telephone metadata program," an eventuality that would require the Court to adjudicate constitutional questions it had not yet had to decide. *Id*.

The legislative debate to which this Court deferred has now come and gone. Although it considered doing so, Congress did not expand the government's statutory authority to permit bulk collection of call records. The government continues to collect call records in bulk, however, based on the same statutory language this Court has already held does not permit it. The government apparently intends to continue this surveillance for at least 180 days, and it apparently intends to retain and use the fruits of its unlawful surveillance indefinitely. Against this background, Plaintiffs respectfully urge the Court to issue the preliminary injunctive relief it refrained from issuing earlier.

### a. Likelihood of success on the merits.

This Court has already concluded that Plaintiffs have shown "a certainty" of success on the merits of their statutory claim. *Clapper*, 785 F.3d at 825. The Court's earlier analysis still holds because Congress, after exhaustive debate, declined to "expand" section 1861 to authorize the bulk collection of call records.

7

Quite the opposite, Congress expressly provided in the USA Freedom Act that, during the initial 180-day period following passage of the Act, both the language of section 1861 *and the government's surveillance authority* remain exactly as they were before. *See* USA Freedom Act § 109(a) (providing that "[t]he amendments made by sections 101 through 103 shall take effect on the date that is 180 days after the date of the enactment of this Act"); *id*. § 109(b) ("[n]othing in this Act shall be construed to alter or eliminate the authority of the Government to obtain an order under [50 U.S.C. § 1861] as in effect prior to the effective date described in subsection (a) during the period ending on such effective date"); *see also* Suppl. Br. for Appellees at 4, *Smith v. Obama*, No. 14-35555 (9th Cir. June 19, 2015) ("the former version of Section 215 remains fully in effect"); June 2 Application at 4 (same).

Notwithstanding the Act's plain language—which, again, expressly states that the government's authority to collect call-detail records has not been "alter[ed]" during the 180-day transition period—the FISC concluded that the USA Freedom Act constituted a legislative ratification of bulk collection and of the FISC's capacious construction of section 1861. June 29 FISC Opinion at 10–11. This reasoning does not withstand scrutiny. Even if legislative history indicated clearly that Congress intended to endorse the FISC's interpretation of section 1861, legislative history could not prevail over the statute's language, which is

8

unambiguous. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given [a] straightforward statutory command, there is no reason to resort to legislative history."); *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012) ("Only if we discern ambiguity do we resort first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." (quotation marks omitted)).

And the legislative history here does *not* clearly evince an intent to authorize bulk collection—as even the FISC acknowledged. *See* June 29 FISC Opinion at 11 ("To be sure, there were statements [in the legislative history] that criticized the FISC's interpretation of 'relevance' that underlay previous orders for the bulk production of call detail records and expressions of approval of the contrary decision of the United States Court of Appeals for the Second Circuit."). The committee report on the bill, for example, declared that "Congress' decision to leave in place the 'relevance' standard for Section 501 orders should *not* be construed as Congress' intent to ratify the FISA Court's interpretation of that term." H. Rep. No. 114-109, at 18–19 (2015) (emphasis added).

The FISC cited two instances in which sponsors of the USA Freedom Act indicated that they expected bulk collection to continue during the 180-day period, but even if these isolated statements were sufficient to establish the views of the Act's sponsors, the appropriate question—if legislative history were relevant at

9

all—is not what individual sponsors of the bill thought, but what *Congress* thought. And on *this* question, the legislative history provides no single answer. *See* June 29 FISC Opinion at 12 ("[F]inding supportive legislative history for a proposition is a little like stumbling upon a multi-family garage sale: if you rummage around long enough, you will find something for everybody, and none of it is worth much.").

In the present context, as in most others, the most reliable indicator of congressional intent is the text of the law. Here, that text admits no ambiguity. It makes clear that Congress intended to leave the government's surveillance authority with respect to call records unaltered for the 180 days after the passage of the Act.

The FISC seems to have reasoned that Congress must have intended to authorize bulk collection during the transitional period because it did not expressly prohibit it. *See id*. at 10–11 ("Congress could have prohibited bulk data collection . . . ."). But the FISC has it backwards. In our democracy, the government has only the powers the people have granted it; the question is not what surveillance Congress has *proscribed*, but what surveillance it has *permitted*. Moreover, here Congress was legislating in the shadow of this Court's May 7 opinion, which indicated that this Court—the *only* appellate court to have construed the statute—would continue to construe the statute to disallow bulk

10

collection unless Congress amended it to expressly authorize such collection. *See, e.g.*, *Clapper*, 785 F.3d at 818 (stating that the Court would read the statute to authorize bulk collection only if Congress authorized it in "unmistakable language"); *id.* at 819 (stating that the government's proposed construction of the statute would require "a clearer signal" from Congress); *id.* at 821 (indicating that, if Congress wanted to authorize bulk collection under the statute, it would have to do so "unambiguously"); *see also id.* at 826–27 (Sack, J., concurring).

This Court's May 7 opinion was cited hundreds of times in the legislative debate that preceded the passage of the Act; it was summarized at length in the committee report; and one senator even read large parts of the opinion into the legislative record. *See* 161 Cong. Rec. S3331-02 (daily ed. May 31, 2015) (statement of Sen. Rand Paul); H. Rep. No. 114-109, at 8–10 (2015); June 2 Application at 9 n.2 ("Congress was aware of the Second Circuit's opinion . . . ."). Against this background, it would be bizarre to understand Congress's "failure" to expressly prohibit bulk collection as an implicit endorsement of it. Indeed, if it has any bearing at all, the doctrine of legislative ratification favors Plaintiffs. *See, e.g.*, H. Rep. No. 114-109, at 19 (2015) ("These changes restore meaningful limits to

11

the 'relevance' requirement of Section 501, consistent with the opinion of the U.S. Court of Appeals for the Second Circuit in *ACLU v. Clapper*.").[5]

The crucial fact, however, is that the language the government is relying on to collect call records now is precisely the same language this Court has already concluded does not permit that surveillance. There is no sound reason to accord this language a different meaning now than the Court accorded it in May. Section 1861 did not authorize bulk collection in May, and it does not authorize it now.

If this Court now reads the statute as the FISC has read it, then the Court must reach the "vexing" constitutional questions it earlier avoided. *Clapper*, 785 F.3d at 821–25. As Plaintiffs have argued, the dragnet surveillance at issue here is

---

[5] The FISC suggested that Congress would not have provided for a transitional period if it had not contemplated that bulk collection would continue during that period. This does not follow. Congress plainly wanted the government and the FISC to have time to transition to the new system described in Sections 101–103 of the Act. But to say that Congress wanted to provide time for a transition to a *new* system is not to say that Congress endorsed any particular view of the *existing* system. Moreover, the existing system had many uses aside from bulk collection, and the government had forcefully cited those uses as a reason to reauthorize Section 215. James Comey, Dir., Fed. Bureau of Investigation, Remarks at the Georgetown University Law Center's Third Annual Cybersecurity Law Institute (May 20, 2015), http://www.fednews.com/transcript.php?item=560656 ("[W]e use section 215 in individual cases in very important circumstances. Fewer than 200 times a year we go to the FISA court in a particular case and get particular records that are important to an intelligence investigation or a counterterrorism investigation. If we lose that authority, which I don't think is controversial with folks, that is a big problem because we will find ourselves in circumstances where we can't use a grand jury subpoena or we can't use a national security letter, unable to obtain information with a court's approval that I think everybody wants us to be able to obtain in individual cases. So that's a problem.").

antithetical to the rights that the Fourth and First Amendments were intended to safeguard. Pl. Br. 38–52 (Fourth Amendment); *id.* at 53–59 (First Amendment); Pl. Reply 17–24 (Fourth Amendment); *id.* at 24–26 (First Amendment). The government's principal argument—that the Supreme Court implicitly authorized the government to place the entire nation under intrusive, indefinite surveillance when it decided in 1979 that the police in Baltimore could install a pen register for several days on one criminal suspect's phone line—is both deeply unpersuasive on its own terms and impossible to reconcile with the Supreme Court's more recent decisions in *United States v. Jones*, 132 S. Ct. 945 (2012), and *Riley v. California*, 134 S. Ct. 2473 (2014). Plaintiffs have briefed these issues at length already and do not believe a reprise of those arguments is necessary here.[6]

### b. Irreparable injury.

In the absence of preliminary relief, Plaintiffs will suffer irreparable injury. As Plaintiffs have noted, Pl. Br. 60, this Court has generally *presumed* irreparable harm where there is an alleged deprivation of constitutional rights, but Plaintiffs

---

[6] *Riley* was decided after Plaintiffs' appeal was fully briefed, but Chief Justice Roberts's opinion for the Court in that case—which held that police may not generally search cell phones under the "search incident to arrest" exception to the warrant requirement—serves as a further caution against the heedless extension of analog-era precedents to circumstances far removed from the ones that gave rise to them. *See, e.g.*, 134 S. Ct. at 2488 (2014) ("That is like saying a ride on horseback is materially indistinguishable from a flight to the moon."); *see also Klayman v. Obama*, 957 F. Supp. 2d 1, 37 (D.D.C. 2013) ("I cannot possibly navigate these uncharted Fourth Amendment waters using as my North Star a case that predates the rise of cell phones.").

would satisfy the irreparable harm standard here even if this presumption did not apply. The continuation of the challenged surveillance means the continuation of the government's intrusion into Plaintiffs' sensitive associations and communications. The chill on whistleblowers and others who would otherwise contact Plaintiffs, Pl. Br. 53–54 (citing record evidence), is also immediate and irremediable. The government's queries of its call-records database compound Plaintiffs' injury because each of those queries involves an analysis of Plaintiffs' records to determine whether Plaintiffs have been in contact with the government's surveillance targets. Pl. Br. 44 n.11, 61. And the government's apparent intent to retain the fruits of its unlawful surveillance even after the 180-day period indicates that, in the absence of injunctive relief, the injury to Plaintiffs will continue indefinitely.

### c. Public interest and the balance of equities.

The public interest and the balance of equities also favor the entry of preliminary relief. As Plaintiffs have explained, Pl. Br. 61, the government has no legitimate interest in conducting surveillance that is unlawful. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 495 (6th Cir. 1999) ("[T]he public is certainly interested in preventing the enforcement of unconstitutional statutes and rules; therefore, no harm to the public will result from the issuance of the injunction here."). Moreover, the preliminary relief sought by Plaintiffs would not

prejudice the government even if it is assumed, against the evidence, Pl. Br. 61–62 (citing official government reports), that the bulk collection of call records is effective and necessary. The record is clear that the government need not collect Plaintiffs' call records in order to obtain the call records of suspected terrorists and their contacts. Pl. Reply 27. If the government believes that Plaintiffs themselves are legitimate investigative targets, it can collect their records with targeted demands under section 1861 or other authorities. Pl. Reply 27. Finally, the preliminary relief that Plaintiffs have sought would not be unduly burdensome for the government to implement. Pl. Reply 27–28 (citing record evidence). In sum, the entry of preliminary relief would mitigate Plaintiffs' injuries without compromising any legitimate government interest.

**Conclusion**

Plaintiffs respectfully request that the Court enter the preliminary relief described above and remand to the district court for expeditious consideration of the proper scope of final relief.

Dated: July 14, 2015                           Respectfully submitted,

                                                 /s/ Jameel Jaffer

Christopher T. Dunn                            Jameel Jaffer
Arthur N. Eisenberg                            Alex Abdo
New York Civil Liberties Union                 Patrick Toomey
   Foundation                                 American Civil Liberties Union
125 Broad Street, 19th Floor                      Foundation
New York, NY 10004                             125 Broad Street, 18th Floor
Phone: (212) 607-3300                          New York, NY 10004

Fax: (212) 607-3318  
aeisenberg@nyclu.org

Phone: (212) 549-2500  
Fax: (212) 549-2654  
jjaffer@aclu.org