# 14-42

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 14-42

➤ ◆◆◆ ➤

AMERICAN CIVIL LIBERTIES UNION; NEW YORK
CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES
UNION FOUNDATION; and NEW YORK CIVIL
LIBERTIES UNION FOUNDATION,

*Plaintiffs-Appellants,*

*(caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## COMBINED SUPPLEMENTAL BRIEF FOR APPELLEES AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

BENJAMIN C. MIZER
*Principal Deputy
Assistant Attorney General*
DOUGLAS N. LETTER
H. THOMAS BYRON III
HENRY C. WHITAKER
*Attorneys*
Civil Division, Appellate Staff
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-3180

PREET BHARARA,
*United States Attorney for the
Southern District of New York*
DAVID S. JONES
JOHN D. CLOPPER
BENJAMIN H. TORRANCE
*Assistant United States
Attorneys*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2739

*Attorneys for Defendants-Appellees*

—v.—

JAMES R. CLAPPER, in his official capacity as Director of
National Intelligence; MICHAEL S. ROGERS, in his official
capacity as Director of the National Security Agency and Chief
of the Central Security Service; LORETTA E. LYNCH, in her
official capacity as Attorney General of the United States;
ASHTON B. CARTER, in his official capacity as Secretary of
Defense; and JAMES B. COMEY, in his official capacity as
Director of the Federal Bureau of Investigation,

*Defendants-Appellees.*

# TABLE OF CONTENTS

PAGE

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT I— Congress Permitted the Section 215 Bulk
Telephony-Metadata Program to Continue
During a Six-Month Transition Period . . . . . . . 3

POINT II— Although Plaintiffs' Claims Are Not
Currently Moot, the Court Should Respect
Congress's Decision in the USA FREEDOM Act
to Permit the Section 215 Program to Continue
During the Transition Period . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

*Cases*:

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. Plata*,
    131 S. Ct. 1910 (2011). . . . . . . . . . . . . . . . . . . . . . 14

*Burke v. Barnes*,
    479 U.S. 361 (1987). . . . . . . . . . . . . . . . . . . . . . . . 13

*Clarke v. United States*,
    915 F.2d 699(D.C. Cir. 1990) . . . . . . . . . . . . . . . 13

*Clinton v. Goldsmith*,
    526 U.S. 529 (1999). . . . . . . . . . . . . . . . . . . . . . . . 18

*Corley v. United States*,
    556 U.S. 303 (2009). . . . . . . . . . . . . . . . . . . . . . . . 10

*Fendler v. U.S. Parole Comm'n*,
    774 F.2d 975 (9th Cir. 1985) . . . . . . . . . . . . . . . 17

*Grimes v. Commissioner of IRS*,
    82 F.3d 286 (9th Cir. 1996) . . . . . . . . . . . . . . . . 16

*Herring v. United States*,
    555 U.S. 135 (2009). . . . . . . . . . . . . . . . . . . . . . . . 16

*Holland v. Goord*,
    758 F.3d 215 (2d Cir. 2014) . . . . . . . . . . . . . . . . 13

*In re Application of the FBI for an Order*
*Requiring the Production of Tangible Things,*
Dkt. Nos. BR 15-77, 15-78
(F.I.S.C. June 17, 2015) . . . . . . . . . . . . . . . . . . . . . 4

*In re Application of the FBI for an Order*
*Requiring the Production of Tangible Things,*
Dkt. Nos. BR 15-75, Misc. 15-01
(F.I.S.C. June 29, 2015) . . . . . . . . . . . . . . . . . . . . . 5

*INS v. Lopez-Mendoza,*
468 U.S. 1032 (1984). . . . . . . . . . . . . . . . . . . . . . . . 16

*Log Cabin Republicans v. United States,*
658 F.3d 1162(9th Cir. 2011) . . . . . . . . . . . . . . . . 13

*Miller v. French,*
530 U.S. 327 (2000). . . . . . . . . . . . . . . . . . . . . . . . 14

*Northern Pipeline Constr. Co. v. Marathon*
*Pipe Line Co.,*
458 U.S. 50 (1982). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pennsylvania Bd. of Prob. & Parole v. Scott,*
524 U.S. 357 (1998). . . . . . . . . . . . . . . . . . . . . . . . 16

*Ramsden v. United States,*
2 F.3d 322 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . 17

*Salazar v. Buono,*
559 U.S. 700 (2010). . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. Dep't of the Treasury v. Galioto,*
477 U.S. 556 (1986). . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Crowell,*
374 F.3d 790 (9th Cir. 2004) . . . . . . . . . . . . . . . . 15

PAGE

*United States v. Schnitzer,*
  567 F.2d 536 (2d Cir. 1977) . . . . . . . . . . . . . . . . . 17

*United States v. Sumner,*
  226 F.3d 1005 (9th Cir. 2000) . . . . . . . . . . . . . . . 15

*Wilkie v. Robbins,*
  551 U.S. 537 (2007). . . . . . . . . . . . . . . . . . . . . . . . 16

*Statutes*:

18 U.S.C. § 2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1651(a) . . . . . . . . . . . . . . . . . . . . . . . . . 18

50 U.S.C. § 1806(e) . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1825(f) . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1828 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1845(e) . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1861 . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

USA FREEDOM Act, Pub. L. No. 114-32,
  129 Stat. 268 . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Legislative History*:

H.R. Rep. No. 114-109 (2015) . . . . . . . . . . . . . . . . 11

161 Cong. Rec. S3275
  (daily ed. May 22, 2015) . . . . . . . . . . . . . 7 , 8, 9

PAGE

161 Cong. Rec. S3389
(daily ed. June 1, 2015). . . . . . . . . . . . . . . . . . . 8, 9

161 Cong. Rec. S3390
(daily ed. June 1, 2015). . . . . . . . . . . . . . . . . . . 8

161 Cong. Rec. S3429
(daily ed. June 2, 2015). . . . . . . . . . . . . . . . . . . 9

161 Cong. Rec. S3439
(daily ed. June 2, 2015). . . . . . . . . . . . . . . . . . . 4, 8

*Rules*:

Fed. R. App. P. 8(a)(1)(C). . . . . . . . . . . . . . . . . . . 19

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 14-42

---

AMERICAN CIVIL LIBERTIES UNION, *et al.*,

*Plaintiffs-Appellants,*

—v.—

JAMES R. CLAPPER, IN HIS OFFICIAL CAPACITY AS
DIRECTOR OF NATIONAL INTELLIGENCE, *et al.*,

*Defendants-Appellees.*

---

## COMBINED SUPPLEMENTAL BRIEF FOR APPELLEES AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

---

### Introduction

This brief addresses the Court's request for additional briefing on the effect of the USA FREEDOM Act on this case and also responds to plaintiffs' recent request for the Court to enter a preliminary injunction against the operation of the Section 215 bulk telephony-metadata program, which was recently reauthorized by the Foreign Intelligence Surveillance Court (FISC) during the limited 180-day transition period authorized by Congress.

**1.** In the USA FREEDOM Act, Congress prohibited the bulk collection of telephony metadata, but delayed that prohibition for 180 days, after which a new statutory framework involving the targeted production of call detail records (telephony metadata) takes effect. Contrary to plaintiffs' insistence, Congress in that legislation did not contemplate an abrupt and immediate end to the Section 215 bulk telephony-metadata program. Quite the opposite, Congress filled the 180-day gap between the legislation's enactment and the effective date of a new targeted production program by temporarily permitting the government to continue the Section 215 bulk telephony-metadata program. That transition period reflects Congress's and the President's combined judgment that there should be an orderly transition from the existing program to the new one, during which the government should retain needed tools to protect against the continuing terrorist threat.

**2.** In their complaint, plaintiffs seek equitable relief with both prospective and retrospective components: prospective relief in the form of both an injunction and declaratory relief against ongoing collection and querying of bulk telephony metadata under the Section 215 program; and a retrospective purge from the Section 215 database of any records containing information about plaintiffs' telephone calls that may have been collected under that program. JA 27.

Plaintiffs' claims will be moot when the bulk collection of telephony metadata under Section 215 ends on November 29, 2015, though they are not moot right now. On that date, the statutory authority for

the Section 215 bulk telephony-metadata program will expire, and the data previously collected and held under that program will not be used in the future for intelligence-gathering or law-enforcement purposes. In the meantime, however, the Court should respect Congress's decision to create an orderly transition away from the Section 215 bulk telephony-metadata program. Especially in light of Congress's considered judgment that this program should continue for this limited period, plaintiffs are not entitled to any of the relief they request.

## ARGUMENT

### POINT I

### Congress Permitted the Section 215 Bulk Telephony-Metadata Program to Continue During a Six-Month Transition Period

**A.** Section 215 of the USA PATRIOT Act, enacted in 2001, amended 50 U.S.C. § 1861 and was the source of the government's statutory authority to conduct the Section 215 bulk telephony-metadata program. Section 215 expired, pursuant to the statutory sunset period, on June 1, 2015. *See* PATRIOT Sunsets Extension Act of 2011, Pub. L. No. 112-14, § 2(a), 125 Stat. 216.

On June 2, 2015, Congress passed, and the President signed, the USA FREEDOM Act, Pub. L. No. 114-32, 129 Stat. 268. First, Congress reauthorized Section 215 and set a new sunset date of December 15, 2019, for that provision, as amended, to expire.

*See id.* § 705(a), 129 Stat. at 300; 161 Cong. Rec. S3439 (daily ed. June 2, 2015) (statement of Sen. Lee) (Congress's "intent in passing the USA FREEDOM Act is that the expired provisions be restored in their entirety just as they were on May 31, 2015, except to the extent they have been amended by the USA FREEDOM Act."); *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. Nos. BR 15-77, 15-78, at 8-13 (F.I.S.C. June 17, 2015) (holding that the USA FREEDOM Act reinstated Section 215 as amended by the statute), *available at* http://www.fisc.uscourts.gov/sites/default/files/BR%2015-77%2015-78%20Memorandum%20Opinion.pdf.

Second, the new statute will, beginning November 29, 2015, prohibit the government from obtaining telephony metadata in bulk under Section 215. *See* USA FREEDOM Act § 103, 129 Stat. at 272 (entitled "Prohibition on Bulk Collection of Tangible Things"). Congress replaced bulk telephony-metadata collection under Section 215 with a new mechanism providing for targeted production by service providers of call detail records. *See id.* § 101, 129 Stat. 269-70.

Finally, Congress provided for a 6-month transition period by delaying for 180 days the effective date of the new prohibition on bulk collection under Section 215, and also the corresponding implementation date of the new regime of targeted production under the statute. USA FREEDOM Act § 109(a), 129 Stat. at 276.

Pursuant to that authority, the government applied to the FISC for authorization to resume the Sec-

tion 215 bulk telephony-metadata program during the transition period. The FISC granted that application. *See In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. Nos. BR 15-75, Misc. 15-01 (F.I.S.C. June 29, 2015) ("June 29 FISC Op."), *available at* http://www.fisc.uscourts.gov/sites/default/files/BR%2015-75%20Misc%2015-01%20Opinion%20and%20 Order_0.pdf. The FISC held, after considering an amicus curiae filing opposing the government's request, that Congress in the USA FREEDOM Act authorized the government to continue the Section 215 bulk telephony-metadata program for 180 days as part of an orderly transition away from bulk collection of telephony metadata under that program. *See id.* at 10-12.

On July 27, 2015, the Office of the Director of National Intelligence (ODNI) issued a public statement that the NSA has determined that "analytic access to that historical metadata collected under Section 215 . . . will cease on November 29, 2015," at the end of the transition period. *See Statement by ODNI on Retention of Data Collected Under Section 215 of the USA PATRIOT Act*, *available at* http://icontherecord.tumblr.com/post/125179645313/statement-by-the-odni-on-retention-of-data (ODNI July 27 Statement). Thus, after that date, no further bulk collection of telephony metadata will take place under the Section 215 program, and the historical telephony metadata will not be used for intelligence or law-enforcement purposes and will not be disseminated. For three months following the end of the transition period, NSA technical personnel will have

access to that historical telephony metadata "solely for data integrity purposes to verify the records produced under the new targeted production authorized by the USA FREEDOM Act." *Id.* The only purpose of that technical access is to verify that the call detail records obtained under the USA FREEDOM Act's new framework of targeted production are similar to the results that would have been produced pursuant to a query under the former Section 215 bulk telephony-metadata program. After that three-month period (approximately February 29, 2016), the historical telephony metadata will be "preserved solely because of preservation obligations in pending civil litigation," and it "will not be used or accessed for any other purpose." *Id.* NSA will destroy the historical telephony metadata "as soon as possible . . . upon expiration of its litigation preservation obligations." *Id.*

**B.** The FISC was right that Congress authorized the Section 215 bulk telephony-metadata program to continue during the six-month transition period.

The USA FREEDOM Act was the product of more than two years of dialogue and debate between the political branches of government on the proper scope of the government's intelligence-gathering capabilities. Part of the compromise on which Congress settled, which the President supported, was to add an unequivocal ban on bulk collection under Section 215 specifying that "[n]o order issued under" Section 215(b)(2) "may authorize collection of tangible things without the use of a specific selection term that meets the requirements" of that subsection. USA FREEDOM Act § 103, 129 Stat. at 272 (entitled "Prohibi-

tion on Bulk Collection of Tangible Things"). Equally part of that compromise, however, was Congress's recognition that this ban on bulk collection would not take effect immediately, but rather would be delayed for 180 days. *Id.* § 109, 129 Stat. at 276.

The USA FREEDOM Act reflected Congress's and the President's judgment that the government should transition away from the current Section 215 bulk telephony-metadata program, under which the government itself collected, held, and queried telephony metadata, to a regime where telecommunications companies themselves hold that telephony metadata and provide to the government, on a continuous basis, telephony metadata that are responsive to targeted government requests approved by the FISC. *See* USA FREEDOM Act § 101, 129 Stat. at 270 (permitting a production order based on a specific selection term to require the ongoing production of telephony metadata from telecommunications providers in a "useful format"). At the same time, Congress proposed and enacted a 180-day transition period in recognition of the reality that the new regime could not be created overnight. As the government explained to Congress, that new production regime required the government to provide to telecommunications companies "the technical details, guidance, and compensation to create a fully operational" new querying model. 161 Cong. Rec. S3275 (daily ed. May 22, 2015) (statement of Sen. Leahy) (quoting letter from National Security Agency Director).

The design and effect of the six-month delay on the prohibition on bulk collection was to preserve the

government's intelligence capabilities by permitting the Section 215 bulk telephony-metadata program to continue for six months while NSA created the technical ability to transition to the new model of targeted production. *See* 161 Cong. Rec. S3439-40 (daily ed. June 2, 2015) (statement of Sen. Leahy) (noting that Congress "included a provision to allow the government to collect call detail records, CDRs, for a 180-day transition period, as it was doing pursuant to Foreign Intelligence Surveillance Court orders prior to June 1, 2015"); 161 Cong. Rec. S3275 (daily ed. May 22, 2015) (statement of Sen. Leahy) (noting the government's understanding that the "'USA FREE-DOM Act would establish a 180-day transition period for transitioning from the current bulk-collection program for telephone metadata to a model where queries would be carried out against business records held by telephone providers'" (quoting letter from National Security Agency Director)).

Congress's intent to permit the Section 215 bulk telephony-metadata program to continue during the transition period is particularly evident in the debate among legislators over the appropriate length of that period. Some in Congress desired a longer transition period, and therefore proposed extending the effective date in § 109 of the USA FREEDOM Act "to continue the program in seamless fashion." 161 Cong. Rec. S3389 (daily ed. June 1, 2015) (statement of Sen. Cornyn); *see id.* at S3390 (statement of Sen. Burr) ("what we are asking is that we go from 6 months to 12 months so we can make sure the technology is in place for this program to continue"). Opponents of that proposed amendment, however, desired not "to

extend the current bulk collection program in place
for a full year," instead preferring "a 180-day transi-
tion period," 161 Cong. Rec. S3429 (daily ed. June 2,
2015) (statement of Sen. Leahy); *see also* 161 Cong.
Rec. S3442 (daily ed. June 2, 2015) (statement of Sen.
Leahy) (describing the amendment as a proposal to
"leave the current bulk collection program in place for
a full year"); 161 Cong. Rec. S3275 (daily ed. May 22,
2015) (statement of Sen. Leahy) (rejecting proposal to
"include a provision to keep the bulk collection pro-
gram in place for more than two years" because the
"NSA Director stated . . . that the NSA needs 180
days to transition to the new targeted program estab-
lished by the USA FREEDOM Act"). The debate
about the proper length of time before the effective
date of the new prohibition on bulk collection reflects
a shared premise of supporters and opponents of the
amendment: that Congress permitted bulk collection
during the transition period.

**C.** Plaintiffs declare that the "plain language" of
the USA FREEDOM Act does not permit bulk collec-
tion during the transition period. Pls' Mot. 8. The on-
ly mention of bulk collection in that "language," how-
ever, delays the newly enacted ban on that practice
for 180 days. *See* USA FREEDOM Act § 103, 129
Stat. at 272. As the FISC correctly noted, Congress's
decision to delay that ban for six months is a power-
ful indication that it intended to permit bulk collec-
tion in the interim period. June 29 FISC Op. at 10.
The expressly delayed ban on bulk collection under
Section 215, as the FISC observed, stands in sharp
contrast to two other bans on bulk collection in the
statute, both of which took effect immediately. *See*

USA FREEDOM Act §§ 201, 501. Congress's failure to use similar language in Section 215 should be presumed to be deliberate. *See, e.g.*, *Barnhart* v. *Sigmon Coal Co.*, 534 U.S. 438, 452 (2002). Plaintiffs' interpretation also renders largely superfluous or symbolic the keystone reform of the legislation—the provision expressly banning bulk collection under Section 215, but only after a 180-day period. Plaintiffs' interpretation makes nonsense of the compromise enacted by Congress with the support of the President, and is contrary to "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant." *Corley* v. *United States*, 556 U.S. 303, 314 (2009) (alterations, citation, and internal quotation marks omitted).

Plaintiffs assert that, by not changing the language of Section 215 authorizing the collection of business records during the transition period, Congress implicitly incorporated into the USA FREE-DOM Act this Court's opinion holding that Section 215 did not authorize bulk collection. *See* Pls.' Mot. 7-8. Plaintiffs rely on language providing that the legislation does not "alter or eliminate the authority of the Government to obtain an order under" Section 215 "as in effect prior to the effective date" of the statute. USA FREEDOM Act § 109, 129 Stat. at 276. That language does not advance plaintiffs' argument, however, because the statute says nothing expressly about what preexisting authority the government had under Section 215 to obtain telephony metadata in bulk. It is implausible that Congress employed the

word "authority" to signify that the government *lacked* authority to conduct the Section 215 bulk telephony-metadata program during the 180-day transition period, contrary to the FISC's repeated orders and the Executive Branch's longstanding and continuing interpretation and application of the law, and notwithstanding the active litigation of that question in this Court. That is especially so because language in the USA FREEDOM Act providing for the 180-day transition period has long been a proposed feature of the legislation. It is thus much more plausible that the "authority" Congress was referring to was not the understanding of Section 215 reflected in this Court's recent interpretation of Section 215, but rather the consistent interpretation of Section 215 by 19 different FISC judges: to permit bulk collection of telephony metadata.

The FISC was thus correct when it observed that "after lengthy public debate, and with crystal clear knowledge of the fact of ongoing bulk collection of call detail records" Congress "chose to allow a 180-day transitional period . . . ." June 29 FISC Op. at 11. This Court need not and should not determine whether Congress "'ratif[ied] the FISA Court's interpretation of'" Section 215. Pls' Mot. 9 (quoting H.R. Rep. No. 114-109, at 18-19 (2015)). What we do know is that, in establishing a transition period, Congress, at a minimum, did not intend to bring to an abrupt halt the government's longstanding Section 215 bulk telephony-metadata program and instead intended to avoid diminishing the government's antiterrorism capabilities during the transition to the new regime of targeted production.

Plaintiffs suggest that the legislative history supports their view that Congress immediately banned bulk collection, citing the House Report suggesting that Congress thought it was "'restor[ing] meaningful limits to the "relevance" requirement'" under Section 215. Pls' Mot. 11-12 (quoting H.R. Rep. No. 114-109, at 19). But the report clearly specified that those "meaningful limits" stemmed from the new requirement that each Section 215 application contain "a specific selection term," H. Rep. No. 114-109, at 18, a requirement that did not take effect until after the 180-day transition period, *see* USA FREEDOM Act § 109, 129 Stat. at 276. There is no evidence that Congress intended to take the further extreme step of banning the Section 215 program immediately.

## POINT II

### Although Plaintiffs' Claims Are Not Currently Moot, the Court Should Respect Congress's Decision in the USA FREEDOM Act to Permit the Section 215 Program to Continue During the Transition Period

Congress's decision to permit the government to conduct the Section 215 bulk telephony-metadata program during this transition period makes clear that plaintiffs are not entitled to any of the (solely equitable) relief they seek.

**A.** Once the 180-day transition period ends, and with it the government's authority to conduct ongoing bulk telephony-metadata collection under Section 215, plaintiff's claims for prospective declaratory and injunctive relief against that program will be moot.

*See, e.g., Log Cabin Republicans* v. *United States*, 658 F.3d 1162, 1166-67 (9th Cir. 2011) (per curiam); *see also*, *e.g.*, *Burke* v. *Barnes*, 479 U.S. 361, 363-64 (1987); *U.S. Dep't of the Treasury* v. *Galioto*, 477 U.S. 556, 559-60 (1986).

Plaintiffs' claim for a retrospective purge of any data collected about their telephone calls under that program will also be moot at that point. The Office of the Director of National Intelligence has announced that the government will not use the Section 215 database for purposes of intelligence or law-enforcement analysis after the transition period provided for by Congress. *See* ODNI July 27 Statement. Instead, NSA will retain the data for three months "solely for data integrity purposes to verify the records produced under the new targeted production authorized by the USA FREEDOM Act," and NSA will destroy the historical metadata as soon thereafter as possible upon expiration of the government's litigation-preservation obligations. *Id.* Following extensive debate, Congress has adopted a careful compromise substitute for the bulk collection of telephony metadata under the Section 215 program (to take effect in 180 days). This is therefore not a case where the government "voluntarily ceased" a challenged practice in order to avoid litigation. *See Clarke* v. *United States*, 915 F.2d 699, 705-06 (D.C. Cir. 1990) (en banc). The data previously collected under the Section 215 bulk telephony-metadata program will no longer be used for intelligence-gathering or law-enforcement purposes after the statutory authorization for the program has expired. *See Holland* v. *Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (holding moot a discontinued challenged

policy where it was "clear that the allegedly wrongful policy is not likely to be reinstated"). There will accordingly be nothing further to litigate after the transition period ends and there is plainly no basis for equitable relief, either injunctive or declaratory.

**B.** Although plaintiffs' claims are not moot until the 180-day transition period ends, this Court should respect the legislative compromise struck in the USA FREEDOM Act, and refrain from any decision that would interfere with the orderly transition to the new statutory framework of targeted production.

**1.** Now that Congress has provided for an orderly transition period during which the Section 215 program continues to be permitted but is strictly time-limited, there is no basis for equitable relief. A plaintiff's entitlement to such relief should be informed by legislation enacted during the pendency of litigation. *See, e.g.*, *Miller* v. *French*, 530 U.S. 327, 347 (2000); *Salazar* v. *Buono*, 559 U.S. 700, 718 (2010). Equally, federal legislation should guide a federal court's exercise of its equitable discretion to fashion the permissible constitutional remedies. *See Brown* v. *Plata*, 131 S. Ct. 1910, 1944, 1946 (2011) (applying the requirements of the Prison Litigation Reform Act to remedies for unconstitutional prison conditions and giving the state two years to comply with determination that prison-overcrowding conditions violated the Constitution); *cf. Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 88-89 (1982).

The USA FREEDOM Act reflects Congress's determination to authorize the Section 215 bulk telephony-metadata program to continue during a brief

transitional winding-down period before the new framework of targeted telephony-metadata production takes effect. Congress thus judged that the sort of abrupt, immediate interference with the program that plaintiffs seek would be contrary to the public interest, confirming that equitable relief is inappropriate quite apart from the government's standing and merits arguments. The USA FREEDOM Act reflects the considered judgment of the political branches that the government's paramount interest in having this temporary transition program to combat the continuing terrorist threat strongly outweighs plaintiffs' privacy interests.

**2.** The only other remedy plaintiffs seek is for the government to "purge from [its] possession all of the call records of Plaintiffs' communications . . . collected," if any, under the Section 215 program at issue here. JA 27. They are not entitled to such an order.

As an initial matter, it is questionable whether courts have inherent authority, untethered to any statutory authorization, to order expungement of records held by the government. *See United States* v. *Crowell*, 374 F.3d 790, 796 (9th Cir. 2004); *United States* v. *Sumner*, 226 F.3d 1005, 1014-15 (9th Cir. 2000). There is no statutory basis for ordering records obtained under Section 215—even if collection was unlawful in retrospect—to be expunged. Congress in the Foreign Intelligence Surveillance Act and related provisions established a number of other remedies— including in some instances suppression in particular proceedings—for records unlawfully obtained, none of which apply here. *See e.g.,* USA FREEDOM Act

§ 102(a)(i)(5); 50 U.S.C. §§ 1806(e), 1825(f), 1845(e) (suppression remedies under FISA); 50 U.S.C. §§ 1810, 1828 (damages remedies under FISA); 18 U.S.C. § 2712 (no injunctive remedy against the government under the Stored Communications Act). The Court should respect Congress's remedial choice. *See, e.g.*, *Wilkie* v. *Robbins*, 551 U.S. 537, 549-51 (2007) (noting that Congress may displace the *Bivens* damages remedy for constitutional violations).

To be sure, the Supreme Court has adopted in certain circumstances the exclusionary rule as a remedy in criminal cases. But the Court has also held that, outside the context of criminal trials, that rule does not foreclose the government from using the fruits of unlawful searches or seizures. *See, e.g.*, *Pennsylvania Bd. of Prob. & Parole* v. *Scott*, 524 U.S. 357, 362 (1998); *INS* v. *Lopez-Mendoza*, 468 U.S. 1032, 1042-50 (1984). A decision to exclude evidence can be justified only when the social costs of the rule are substantially outweighed by its deterrent value. *See, e.g.*, *Herring* v. *United States,* 555 U.S. 135, 141 (2009). Here, no deterrence is needed, or even possible, in light of the imminent end of Section 215 bulk collection of telephony metadata mandated by statute to take effect later this year. It is even less plausible that plaintiffs would have a right to have expunged any business records the government may have acquired under Section 215 that contain telephony metadata about their calls in particular. *See Grimes* v. *Commissioner of IRS*, 82 F.3d 286, 291 (9th Cir. 1996) (holding that the Internal Revenue Service was entitled to retain copies of unlawfully seized tax rec-

ords); *Ramsden* v. *United States*, 2 F.3d 322, 327 (9th Cir. 1993) (similar).

This Court appears to have recognized that expungement may be an available remedy in certain "'unusual or extreme case[s].'" *United States* v. *Schnitzer*, 567 F.2d 536, 539-40 (2d Cir. 1977). But even to the extent expungement is available in theory in some circumstances, it is a "narrow power," to be exercised only after balancing the equities. *Id.* The party seeking expungement must show a "real and immediate threat of irreparable harm." *Fendler* v. *U.S. Parole Comm'n*, 774 F.2d 975, 979 (9th Cir. 1985). Plaintiffs cannot make such a showing in light of Congress's decision to permit bulk collection temporarily in the USA FREEDOM Act. And, to the extent those claims remain live, expungement would not be appropriate after the completion of the orderly transition period, since the government will no longer use the data obtained under the Section 215 bulk telephony-metadata program for intelligence-gathering or law-enforcement purposes. The NSA, moreover, will destroy that data after the transition period as soon the government is no longer under any obligation to preserve that data for litigation-preservation purposes.

**3.** For the foregoing reasons, none of the requested relief is available to plaintiffs in light of the USA FREEDOM Act.

The Court may wish to vacate its opinion and remand the case for the district court to decide in the first instance the effect of the USA FREEDOM Act on the jurisdictional and remedial issues in this case.

The district court could then determine as a threshold matter whether some or all of the case is or will be moot in light of the USA FREEDOM Act, and whether the requested relief, including expungement, is legally foreclosed or would be unavailable as a matter of equity.

At a minimum, the Court should reject plaintiffs' extraordinary request to bypass the district court and *itself* impose a preliminary injunction without any opportunity for the kind of proceedings a district court normally undertakes before exercising its equitable powers. The normal way to obtain compulsory relief in the court of appeals is to ask for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a). Plaintiffs make no attempt to satisfy the demanding standards for obtaining such a writ, which would require plaintiffs to show, among other things, that a writ would be in aid of this Court's appellate jurisdiction, and that adequate relief cannot be obtained in any other court. *See, e.g.*, *Clinton* v. *Goldsmith*, 526 U.S. 529, 534-38 (1999). Here, the district court is not only an available forum to provide plaintiffs with the relief they seek, but also is in the best position to weigh the equities.

This Court may protect its jurisdiction in extraordinary circumstances by entering an injunction pending appeal. But plaintiffs are asking for a preliminary injunction—*i.e.*, an injunction pending final adjudication of the merits of the case—not an injunction pending appeal. And even if plaintiffs' request could fairly be characterized as an injunction pending appeal or otherwise in aid of this Court's jurisdiction (which it

is not), they would have to first request such an in-junction from the district court in the first instance. *See* Fed. R. App. P. 8(a)(1)(C).

## CONCLUSION

For the foregoing reasons, the Court should hold that plaintiffs are not entitled to any equitable relief in light of the USA FREEDOM Act. In the alternative, the Court may wish to vacate its opinion and remand the case to the district court for it to consider the effect of that enactment, and plaintiffs' request for an injunction, in the first instance.

Dated:     New York, New York
           July 27, 2015

                      Respectfully submitted,

                      PREET BHARARA,
                      *United States Attorney for the*
                      *Southern District of New York,*
                      *Attorney for Defendant-Appellee.*

                      DAVID S. JONES,
                      JOHN D. CLOPPER,
                      BENJAMIN H. TORRANCE,
                      *Assistant United States Attorneys,*
                      *Of Counsel.*

BENJAMIN C. MIZER,
*Principal Deputy Assistant Attorney General*

DOUGLAS N. LETTER,
H. THOMAS BYRON III,
HENRY C. WHITAKER,
*Attorneys, Appellate Staff*
*Civil Division, Department of Justice*