Approved for public release as redacted by the ODNI 20150828

TOP SECRET//SI//NOFORN

Filed
United States Foreign
Intelligence Surveillance Court

AUG 27 2015

LeeAnn Flynn Hall, Clerk of Court

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D. C.

IN RE APPLICATION OF THE FEDERAL
BUREAU OF INVESTIGATION FOR AN
ORDER REQUIRING THE PRODUCTION
OF TANGIBLE THINGS FROM



Docket Number: BR

15-99

## PRIMARY ORDER

A verified application having been made by the Director of the Federal Bureau of

Investigation (FBI) for an order pursuant to the Foreign Intelligence Surveillance Act of

1978 (the Act), Title 50, United States Code (U.S.C.), § 1861, as amended, requiring the

TOP SECRET//SI//NOFORN

Derived from:   Pleadings in the above-captioned docket
Declassify on:  28 August 2040

Approved for public release as redacted by the ODNI 20150828

production to the National Security Agency (NSA) of the tangible things described below, and full consideration having been given to the matters set forth therein, the Court finds as follows:

1. There are reasonable grounds to believe that the tangible things sought are relevant to authorized investigations (other than threat assessments) being conducted by the FBI under guidelines approved by the Attorney General under Executive Order 12333 to protect against international terrorism, which investigations are not being conducted solely upon the basis of activities protected by the First Amendment to the Constitution of the United States. [50 U.S.C. § 1861(c)(1)]

2. The tangible things sought could be obtained with a subpoena duces tecum issued by a court of the United States in aid of a grand jury investigation or with any other order issued by a court of the United States directing the production of records or tangible things. [50 U.S.C. § 1861(c)(2)(D)]

3. The application includes an enumeration of the minimization procedures the Government proposes to follow with regard to the tangible things sought, which meet the definition of minimization procedures in 50 U.S.C. § 1861(g). *See* 50 U.S.C. § 1861(c)(1), as amended by the USA FREEDOM Act of 2015. Such procedures are similar to the minimization procedures approved and adopted as binding by the order of this Court in Docket Number BR 15-75 and its predecessors. [50 U.S.C. § 1861(c)(1)]

Approved for public release as redacted by the ODNI 20150828

Accordingly, the Court finds that the application of the United States to obtain the tangible things, as described below, satisfies the requirements of the Act and, therefore,

IT IS HEREBY ORDERED, pursuant to the authority conferred on this Court by the Act, that the application is GRANTED IN PART, and it is

FURTHER ORDERED as follows:

(1) A. The Custodians of Records of ▓▓▓▓▓▓▓▓▓▓ shall produce to NSA upon service of the appropriate secondary order, and continue production on an ongoing daily basis thereafter for the duration of this order, unless otherwise ordered by the Court, an electronic copy of the following tangible things: all call detail records or "telephony metadata"[1] created by ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓

(1) B. The Custodian of Records of ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ shall produce to NSA upon service of the

---

[1] For purposes of this Order "telephony metadata" includes comprehensive communications routing information, including but not limited to session identifying information (e.g., originating and terminating telephone number, International Mobile Subscriber Identity (IMSI) number, International Mobile station Equipment Identity (IMEI) number, etc.), trunk identifier, telephone calling card numbers, and time and duration of call. Telephony metadata does not include the substantive content of any communication, as defined by 18 U.S.C. § 2510(8), or the name, address, or financial information of a subscriber or customer. Furthermore, this Order does not authorize the production of cell site location information (CSLI).

Approved for public release as redacted by the ODNI 20150828

appropriate secondary order, and continue production on an ongoing daily basis thereafter for the duration of this order, unless otherwise ordered by the Court, an electronic copy of the following tangible things: all call detail records or "telephony metadata" created by ▮▮▮ for communications (i) between the United States and abroad; or (ii) wholly within the United States, including local telephone calls. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(2) With respect to any information the FBI receives as a result of this Order (information that is disseminated to it by NSA), the FBI shall follow the procedures set forth in *The Attorney General's Guidelines for Domestic FBI Operations* (September 29, 2008).

(3) With respect to the information that NSA receives or has received as a result of this Order or predecessor Orders of this Court requiring the production to NSA of telephony metadata pursuant to 50 U.S.C. § 1861 ("BR metadata"), NSA shall strictly adhere to the limitations and procedures set out at subparagraphs A. through G. below. Furthermore, after November 28, 2015, the Government shall not access BR metadata for intelligence analysis purposes.

A. The Government is hereby prohibited from accessing BR metadata for any purpose except as described herein.

Approved for public release as redacted by the ODNI 20150828

B. NSA shall store and process the BR metadata in repositories within secure networks under NSA's control.[2] The BR metadata shall carry unique markings such that software and other controls (including user authentication services) can restrict access to it to authorized personnel who have received appropriate and adequate training with regard to this authority. NSA shall restrict access to the BR metadata to authorized personnel who have received appropriate and adequate training.[3] Appropriately trained and authorized technical personnel may access the BR metadata to perform those processes needed to make it usable for intelligence analysis. Technical personnel may query the BR metadata using selection terms[4] that have not been RAS-

---

[2] The Court understands that NSA will maintain the BR metadata in recovery back-up systems for mission assurance and continuity of operations purposes. NSA shall ensure that any access or use of the BR metadata in the event of any natural disaster, man-made emergency, attack, or other unforeseen event is in compliance with the Court's Order.

[3] The Court understands that the technical personnel responsible for NSA's underlying corporate infrastructure and the transmission of the BR metadata from the specified persons to NSA, will not receive special training regarding the authority granted herein.



Approved for public release as redacted by the ODNI 20150828

approved (described below) for those purposes described above, and may share the results of those queries with other authorized personnel responsible for these purposes, but the results of any such queries will not be used for intelligence analysis purposes. An authorized technician may access the BR metadata to ascertain those identifiers that may be high volume identifiers. The technician may share the results of any such access, *i.e.*, the identifiers and the fact that they are high volume identifiers, with authorized personnel (including those responsible for the identification and defeat of high volume and other unwanted BR metadata from any of NSA's various metadata repositories), but may not share any other information from the results of that access for intelligence analysis purposes. In addition, authorized technical personnel may access the BR metadata for purposes of obtaining foreign intelligence information pursuant to the requirements of subparagraph (3)C below.

C. The Government may request, by motion and on a case-by-case basis, permission from the Court for NSA[5] to use specific selection terms that satisfy the

---

[5] For purposes of this Order, "National Security Agency" and "NSA personnel" are defined as any employees of the National Security Agency/Central Security Service ("NSA/CSS" or "NSA") and any other personnel engaged in Signals Intelligence (SIGINT) operations authorized pursuant to FISA if such operations are executed under the direction, authority, or control of the Director, NSA/Chief, CSS (DIRNSA). NSA personnel shall not disseminate BR metadata outside the NSA unless the dissemination is permitted by, and in accordance with, the requirements of this Order that are applicable to the NSA.

Approved for public release as redacted by the ODNI 20150828

reasonable articulable suspicion (RAS) standard[6] as "seeds" to query the BR metadata for purposes of obtaining foreign intelligence information. The Government may query

---

[6] The reasonable articulable suspicion (RAS) standard is met when, based on the factual and practical considerations of everyday life on which reasonable and prudent persons act, there are facts giving rise to a reasonable, articulable suspicion that the selection term to be queried is associated with ▬▬▬▬ provided, however, that any selection term reasonably believed to be used by a United States (U.S.) person shall not be regarded as associated with ▬▬▬▬ solely on the basis of activities that are protected by the First Amendment to the Constitution. For purposes of this Order, the term ▬▬▬▬



Approved for public release as redacted by the ODNI 20150828

the BR metadata to obtain contact chaining information within two hops of an approved "seed."[7] In addition, the Director or Acting Director of NSA may authorize the emergency querying of the BR metadata with a selection term for purposes of obtaining foreign intelligence information, within two hops of a "seed," if: (1) the Director or Acting Director of NSA reasonably determines that an emergency situation



[7] The first "hop" from a seed returns results including all identifiers (and their associated metadata) with a contact and/or connection with the seed. The second "hop" returns results that include all identifiers (and their associated metadata) with a contact and/or connection with an identifier revealed by the first "hop."

Approved for public release as redacted by the ODNI 20150828

exists with respect to the conduct of such querying before an order authorizing such use of a selection term can with due diligence be obtained; and (2) the Director or Acting Director of NSA reasonably determines that the RAS standard has been met with respect to the selection term.[8] In any case in which this emergency authority is exercised, the Government shall make a motion in accordance with the Primary Order to the Court as soon as practicable, but not later than 7 days after the Director or Acting Director of NSA authorizes such query.[9]

(i) Any submission to the Court under this emergency provision shall, at a minimum, specify the selection term for which query authorization is sought or was granted, provide the factual basis for the NSA's belief that the reasonable articulable suspicion standard has been met with regard to that selection term and, if such query has already taken place, a statement of the emergency necessitating such query.[10]

---

[8] Before an emergency query is performed under this authority, NSA's Office of General Counsel (OGC), in consultation with the Director or Acting Director, shall confirm that any selection term reasonably believed to be used by a United States (U.S.) person is not regarded as associated with [REDACTED] solely on the basis of activities that are protected by the First Amendment to the Constitution.

[9] In the event the Court denies such motion, the Government shall take appropriate remedial steps, including any steps the Court may direct.

[10] For any selection term that is subject to ongoing Court-authorized electronic surveillance, pursuant to 50 U.S.C. § 1805, based on this Court's finding of probable cause to believe that the selection term is being used or is about to be used by agents of [REDACTED] including those used by U.S. persons, the Government may use such selection terms as "seeds" during any period of ongoing Court-authorized electronic surveillance without first seeking authorization

Approved for public release as redacted by the ODNI 20150828

TOP SECRET//SI//NOFORN

(ii) NSA shall ensure, through adequate and appropriate technical and management controls, that queries of the BR metadata for intelligence analysis purposes will be initiated using only a selection term that has been RAS-approved.[11] Whenever the BR metadata is accessed for foreign intelligence analysis purposes or using foreign intelligence analysis query tools, an auditable record of the activity shall be generated.[12]

(iii) The Court's finding that a selection term is associated with  shall be effective until November 28, 2015, at 11:59 p.m. Eastern Time.[13]

---

from this Court as described herein. Except in the case of an emergency, NSA shall first notify the Department of Justice, National Security Division of its proposed use as a seed any selection term subject to ongoing Court-authorized electronic surveillance.

[11] The Court understands that NSA has implemented technical controls that preclude any query for intelligence analysis purposes with a non-RAS-approved seed. In cases of imminent threat to human life NSA may bypass these technical controls, subject to management controls, to conduct queries using RAS-approved seeds that have been blocked by technical restraints.

[12] This auditable record requirement shall not apply to further accessing of the results of RAS-approved queries.

[13] The Court understands that from time to time the information available to NSA will indicate that a selection term is or was associated with a Foreign Power only for a specific and limited time frame. In such cases, the Government's submission shall specify the time frame for which the selection term is or was associated with ▓▓▓▓▓▓ In the event that the RAS standard is met, analysts conducting manual queries using that selection term shall properly minimize information that may be returned within query results that fall outside of that timeframe.

The Court understands that NSA received certain call detail records pursuant to other authority, in addition to the call detail records produced in response to this Court's Orders. NSA shall store, handle, and disseminate call detail records produced in response to this Court's Orders pursuant to this Order, ▓▓▓▓▓▓

TOP SECRET//SI//NOFORN

Approved for public release as redacted by the ODNI 20150828

(iv) Queries of the BR metadata using RAS-approved selection terms for purposes of obtaining foreign intelligence information may occur by manual analyst query only. Queries of the BR metadata to obtain foreign intelligence information shall return only that metadata within two "hops" of an approved seed.

D. Results of any intelligence analysis queries of the BR metadata may be shared, prior to minimization, for intelligence analysis purposes among NSA analysts, subject to the requirement that all NSA personnel who receive query results in any form first receive appropriate and adequate training and guidance regarding the procedures and restrictions for the handling and dissemination of such information.[14] NSA shall apply the minimization and dissemination requirements and procedures of Section 7 of United States Signals Intelligence Directive SP0018 (USSID 18) issued on January 25, 2011, to any results from queries of the BR metadata, in any form, before the information is disseminated outside of NSA in any form. Additionally, prior to disseminating any U.S. person information outside NSA, the Director of NSA, the Deputy Director of NSA, or one of the officials listed in Section 7.3(c) of USSID 18 (i.e., the Director of the Signals Intelligence Directorate (SID), the Deputy Director of the SID,

---

[14] In addition, the Court understands that NSA may apply the full range of SIGINT analytic tradecraft to the results of intelligence analysis queries of the collected BR metadata.

Approved for public release as redacted by the ODNI 20150828
TOP SECRET//SI//NOFORN

the Chief of the Information Sharing Services (ISS) office, the Deputy Chief of the ISS office, and the Senior Operations Officer of the National Security Operations Center) must determine that the information identifying the U.S. person is in fact related to counterterrorism information and that it is necessary to understand the counterterrorism information or assess its importance.[15] Notwithstanding the above requirements, NSA may share results from intelligence analysis queries of the BR metadata, including U.S. person identifying information, with Executive Branch personnel (1) in order to enable them to determine whether the information may be exculpatory or otherwise discoverable in legal proceedings or (2) to facilitate their lawful oversight functions. Notwithstanding the above requirements, NSA may share the results from intelligence analysis queries of the BR metadata, including United States person information, with Legislative Branch personnel to facilitate lawful oversight functions.

E. The Application requests authority for the Government to retain BR metadata after November 28, 2015, in accordance with the Opinion and Order of this Court issued on March 12, 2014 in docket number BR 14-01, and subject to the conditions stated therein, including the requirement to notify this Court of any material developments in

---

[15] In the event the Government encounters circumstances that it believes necessitate the alteration of these dissemination procedures, it may obtain prospectively applicable modifications to the procedures upon a determination by the Court that such modifications are appropriate under the circumstances and in light of the size and nature of this bulk collection.

TOP SECRET//SI//NOFORN

Approved for public release as redacted by the ODNI 20150828

civil litigation pertaining to such BR metadata. The Application also requests authority, for a period ending on February 29, 2016, for appropriately trained and authorized technical personnel (described in subparagraph B. above) to access BR metadata to verify the completeness and accuracy of call detail records produced under the targeted production orders authorized by the USA FREEDOM Act. The Court is taking these requests under advisement and will address them in a subsequent order or orders. Accordingly, this Primary Order does not authorize the retention and use of BR metadata beyond November 28, 2015.

F. NSA and the National Security Division of the Department of Justice (NSD/DoJ) shall conduct oversight of NSA's activities under this authority as outlined below.

(i) NSA's OGC and Office of the Director of Compliance (ODOC) shall ensure that personnel with access to the BR metadata receive appropriate and adequate training and guidance regarding the procedures and restrictions for collection, storage, analysis, dissemination, and retention of the BR metadata and the results of queries of the BR metadata. NSA's OGC and ODOC shall further ensure that all NSA personnel who receive query results in any form first receive appropriate and adequate training and guidance regarding the procedures and restrictions for the handling and dissemination of such information. NSA shall

Approved for public release as redacted by the ODNI 20150828

maintain records of all such training.[16] OGC shall provide NSD/DoJ with copies of all formal briefing and/or training materials (including all revisions thereto) used to brief/train NSA personnel concerning this authority.

(ii) NSA's ODOC shall monitor the implementation and use of the software and other controls (including user authentication services) and the logging of auditable information referenced above.

(iii) NSA's OGC shall consult with NSD/DoJ on all significant legal opinions that relate to the interpretation, scope, and/or implementation of this authority. When operationally practicable, such consultation shall occur in advance; otherwise NSD shall be notified as soon as practicable.

(iv) At least once during the authorization period, NSA's OGC, ODOC, NSD/DoJ, and any other appropriate NSA representatives shall meet for the purpose of assessing compliance with this Court's orders. Included in this meeting will be a review of NSA's monitoring and assessment to ensure that only approved metadata is being acquired. The results of this meeting shall be reduced to writing and submitted to the Court prior to the expiration of the authority requested herein.

---

[16] The nature of the training that is appropriate and adequate for a particular person will depend on the person's responsibilities and the circumstances of his access to the BR metadata or the results from any queries of the metadata.

Approved for public release as redacted by the ODNI 20150828

(v) At least once during the authorization period, NSD/DoJ shall meet with NSA's Office of the Inspector General to discuss their respective oversight responsibilities and assess NSA's compliance with the Court's orders.

(vi) Prior to implementation of any automated query processes, such processes shall be reviewed and approved by NSA's OGC, NSD/DoJ, and the Court.

G. Approximately every thirty days, NSA shall file with the Court a report that includes a statement of the number of instances since the preceding report in which NSA has shared, in any form, results from queries of the BR metadata that contain United States person information, in any form, with anyone outside NSA, other than Executive Branch or Legislative Branch personnel receiving such results for their purposes that are exempted from the dissemination requirements of paragraph (3)D above. For each such instance in which United States person information has been shared, the report shall include NSA's attestation that one of the officials authorized to approve such disseminations determined, prior to dissemination, that the information was related to counterterrorism information and necessary to understand counterterrorism information or to assess its importance.

(4) The Court recognizes that there are two cases involving challenges to the legality of this collection pending before federal appellate courts, *Klayman v. Obama*, No.

Approved for public release as redacted by the ODNI 20150828

TOP SECRET//SI//NOFORN

14-5004 (D.C. Cir. argued Nov. 4, 2014), and *Smith v. Obama*, No. 14-35555 (9th Cir. argued Dec. 8, 2014), and one case in which a federal appeals court panel has issued an opinion regarding the legality of this collection, *A.C.L.U. v. Clapper*, No. 14-42 (2d Cir. May 7, 2015).[17] If an opinion is issued in any of the two pending cases prior to the expiration of this Order, the government is directed to inform the Court promptly if the government's implementation of this Order has changed as a result of such opinion(s). The government also is directed to inform the Court promptly if the government's implementation of this Order has changed as a result of the opinion in *A.C.L.U. v. Clapper*.

*-- Remainder of page intentionally left blank. --*

---

[17] By letter dated June 10, 2015 in docket number Misc. No. 15-01, the government notified the Court that on June 9, 2015 the federal appeals court panel entered an order which directed the parties in that litigation to submit supplemental briefs regarding the effect of the USA FREEDOM Act on the case and "in particular whether any or all of the claims asserted by the plaintiffs-appellants have been rendered moot as a result of that legislation." The order also stayed issuance of the court's mandate pending the parties' supplemental briefing and extended the deadline for the submission of any petitions for rehearing. The Court understands that on July 14, 2015, the ACLU filed a Motion for Preliminary Injunction in which it also presented arguments regarding the effect of the USA FREEDOM Act on the case; and that on July 27, 2015, the government filed a Combined Supplemental Brief for Appellees and Opposition to Motion for Preliminary Injunction. The Court further understands that as of the date of this Order, the Second Circuit panel has not issued any additional relevant opinions or orders. If an additional opinion or order is issued prior to the expiration of this Order, the government is directed to inform the Court promptly if the government's implementation of this Order has changed as a result of any such opinion or order.

TOP SECRET//SI//NOFORN

Approved for public release as redacted by the ODNI 20150828

TOP SECRET//SI//NOFORN

This authorization regarding ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ expires on the 28th day of November, 2015, at 11:59 p.m., Eastern Time.

Signed  27 Aug. 15   3:10pm  Eastern Time
        Date         Time

*[signature]*

MICHAEL W. MOSMAN
Judge, United States Foreign
Intelligence Surveillance Court

I, ████████ Chief Deputy Clerk, FISC, certify that this document is a true and correct copy of the original

TOP SECRET//SI//NOFORN

17