14-42
ACLU v. Clapper

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: September 2, 2015      Decided: October 29, 2015)

Docket No. 14-42-cv

————————

AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION,
NEW YORK CIVIL LIBERTIES UNION, and NEW YORK CIVIL LIBERTIES UNION
FOUNDATION,

*Plaintiffs-Appellants,*

— v. —

JAMES R. CLAPPER, in his official capacity as Director of National Intelligence,
MICHAEL S. ROGERS, in his official capacity as Director of the National Security
Agency and Chief of the Central Security Service, ASHTON B. CARTER, in his
official capacity as Secretary of Defense, LORETTA E. LYNCH, in her official
capacity as Attorney General of the United States, and JAMES B. COMEY, in his
official capacity as Director of the Federal Bureau of Investigation,

*Defendants-Appellees.*

————————

CERTIFIED COPY ISSUED ON 10/29/2015

B e f o r e :

SACK and LYNCH , *Circuit Judges*, and BRODERICK, *District Judge*.[*]

––––––––––––––––––

Plaintiffs-appellants American Civil Liberties Union and American Civil Liberties Union Foundation, and New York Civil Liberties Union and New York Civil Liberties Union Foundation, move for a preliminary injunction, requesting various relief.  We conclude that Congress intended to authorize the continuation of the bulk telephone metadata collection program for a limited period of 180 days, and decline to reach the constitutional issues for prudential reasons.  We therefore DENY the motion for a preliminary injunction and REMAND for further proceedings in the district court.

––––––––––––––

ALEXANDER ABDO, American Civil Liberties Union Foundation (Jameel Jaffer, Patrick Toomey, American Civil Liberties Union Foundation, New York, NY; Christopher T. Dunn, Arthur N. Eisenburg, New York Civil Liberties Union Foundation, New York, NY, *on the brief*), New York, NY, *for Plaintiffs-Appellants*.

HENRY C. WHITAKER, United States Department of Justice (Benjamin C. Mizer, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC; Douglas N. Letter, H. Thomas

––––––––––––––––––

[*] The Honorable Vernon S. Broderick, of the United States District Court for the Southern District of New York, sitting by designation.

2

Byron III, Civil Division, Appellate Staff, United States Department of Justice, Washington, DC; Preet Bharara, United States Attorney for the Southern District of New York, New York, NY; David S. Jones, John D. Clopper, Benjamin H. Torrance, Assistant United States Attorneys, New York, NY, *on the brief*), Washington, DC, *for Defendants-Appellees*.

---

GERARD E. LYNCH, *Circuit Judge*:

This opinion concerns the effect of the passage of the USA FREEDOM Act ("Freedom Act") on ongoing litigation surrounding the legality of the government's bulk telephone metadata collection program. We addressed the merits in an earlier opinion, <u>ACLU v. Clapper</u>, 785 F.3d 787 (2d Cir. 2015). In that opinion we held that the bulk telephone metadata collection program was not authorized by provisions of the USA PATRIOT Act ("Patriot Act"). Subsequent to that decision, Congress passed the Freedom Act, which effectively put an end to the telephone metadata program and created an alternative program, but provided for a 180-day transition period. The effect of this transition period is the primary issue before the Court. Appellants move for a preliminary injunction to bar the government, during the pendency of the litigation, from collecting Appellants' call records under the telephone metadata program, to require the government to quarantine all of Appellants' call records already collected under

3

the program, and to prohibit the government from querying metadata obtained

through the program using any phone number or other identifier associated with

them.  While we find that Appellants' claims are not moot at this time, we decline

to disturb the decision by Congress to provide for a 180-day transition period to

put an orderly end to the telephone metadata program.  We therefore deny the

motion for a preliminary injunction.

## BACKGROUND

The underlying appeal concerns the legality of the bulk telephone

metadata collection program, under which the National Security Agency

("NSA") collects metadata about telephone calls made by and to Americans, and

aggregates those metadata into a repository that can later be queried.  Telephone

metadata does not include the contents of a telephone call, but rather the details

*about* the call, such as the length of the call, the phone number from which the call

was made, and the phone number at which the call was received – information

sometimes referred to as call detail records.

Attention to the issue of bulk surveillance of American citizens by the

government has sharply increased among the American public, the courts, and

the legislature since Edward Snowden began his highly publicized disclosures of

4

confidential information about the program in 2013. Recently, we issued an

opinion in this case, finding that the bulk telephone metadata program in use by

the NSA was not authorized by § 215 of the USA PATRIOT Act of 2001, Pub. L.

No. 107-56, 115 Stat. 272 (2001), which amended the Foreign Intelligence

Surveillance Act of 1978 ("FISA"), Pub. L. No. 95-511, 92 Stat. 1783 (1978)

(codified as amended at 50 U.S.C. §§ 1801 *et seq*.). Shortly thereafter, Congress

allowed the Patriot Act to expire, then passed the USA FREEDOM Act of 2015,

Pub. L. No. 114-23, 129 Stat. 268 (2015), which altered § 215 in significant ways.

## I.     Section 215

In 1978, Congress enacted FISA, comprehensive legislation aimed at

curtailing abuses and delineating procedures to be employed in conducting

surveillance in foreign intelligence investigations. Congress amended FISA after

the terrorist attacks of September 11, 2001, in the Patriot Act.

Section 215 of the Patriot Act allows the director of the FBI or his designee to

> make an application for an order requiring the
> production of any tangible things (including books,
> records, papers, documents, and other items) for an
> investigation to obtain foreign intelligence information
> not concerning a United States person or to protect
> against international terrorism or clandestine
> intelligence activities.

50 U.S.C. § 1861(a)(1). In its current form, in effect until November 29, 2015, the

provision requires such an application to include

> a statement of facts showing that there are reasonable
> grounds to believe that the tangible things sought are
> relevant to an authorized investigation (other than a
> threat assessment) conducted in accordance with
> subsection (a)(2) to obtain foreign intelligence
> information not concerning a United States person or to
> protect against international terrorism or clandestine
> intelligence activities.

Id. § 1861(b)(2)(A).

## II.     The May 7 Order

On June 11, 2013, the appellants in this matter, the American Civil Liberties

Union and American Civil Liberties Union Foundation (collectively, "ACLU")

and the New York Civil Liberties Union and New York Civil Liberties Union

Foundation (collectively, "NYCLU") sued the government officials responsible

for administering the telephone metadata program, challenging the program on

both statutory and constitutional grounds and seeking declaratory and injunctive

relief. Appellants' complaint asked the court to declare that the telephone

metadata program exceeded the authority granted by § 215, and also violated the

First and Fourth Amendments to the U.S. Constitution. The complaint also asked

the court to permanently enjoin the government from continuing the program, and to order the government to "purge from their possession all of the call records of Plaintiffs' communications" collected in accordance with the program. Complaint at 10, ACLU v. Clapper, No. 1:13-cv-03994-WHP (S.D.N.Y. 2013).

On May 7, 2015, this Court held that § 215 of the Patriot Act did not authorize the bulk telephone metadata program. We reasoned that if Congress had intended to authorize bulk collection of virtually all metadata associated with telephone calls made by and to Americans, it would have done so explicitly. The collection of these call detail records was not "relevant" to authorized counterterrorism investigation by the government under 50 U.S.C. § 1861(b)(2)(A), and thus, the telephone metadata program exceeded the authority granted by FISA. Clapper, 785 F.3d at 818–19, 826.

## III.    The USA FREEDOM Act

Section 215, along with certain other provisions of the Patriot Act, expired on June 1, 2015. See PATRIOT Sunsets Extension Act of 2011, Pub. L. No. 112-14, 125 Stat. 216 (2011). On June 2, 2015, Congress passed the Freedom Act, which the President has signed into law. The Freedom Act amends § 215 in significant ways.

7

The Freedom Act amends § 215 of the Patriot Act to permit the government to collect call detail records under 50 U.S.C. § 1861 only if it meets certain "additional requirements," including a "reasonable, articulable suspicion that such specific selection term is associated with a foreign power . . . or an agent of a foreign power engaged in international terrorism or activities in preparation therefor." USA FREEDOM Act § 101(a)(3). This provision provides for more narrowly tailored and targeted collection of call detail records. Section 101 also requires the government to adopt minimization procedures that "require the prompt destruction" of call detail records produced that it determines are not foreign intelligence information. Id. § 101(b)(3)

Section 103 of the Freedom Act, titled "Prohibition on Bulk Collection of Tangible Things," states that "[n]o order issued under this subsection may authorize the collection of tangible things without the use of a specific selection term" that meets certain requirements. Id. The purpose of § 103 is to "make[] clear that the government may not engage in indiscriminate bulk collection of any tangible thing or any type of record." H.R. Rep. No. 114-109, pt. 1, at 18 (2015). Section 103 is also intended to "restore meaningful limits to the

8

'relevance' requirement of Section 501, consistent with the opinion of the U.S.

Court of Appeals for the Second Circuit in <u>ACLU v. Clapper</u>." <u>Id</u>. at 19.

Largely at issue in the present dispute is § 109, titled "Effective Date," which delays the effective date of §§ 101–103 above, sections dealing specifically with the telephone metadata program. Section 109 states, "The amendments made by sections 101 through 103 shall take effect on the date that is 180 days after the date of the enactment of this Act."[1] Section 109 further states that

> [n]othing in this Act shall be construed to alter or eliminate the authority of the Government to obtain an order under title V of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1861 et seq.) as in effect prior to the effective date described in subsection (a) during the period ending on such effective date.

USA FREEDOM Act § 109.

On the day the Freedom Act was enacted, the government asked the Foreign Intelligence Surveillance Court ("FISC"), which provides judicial oversight of classified intelligence community activities, to allow it to continue the telephone metadata program during the 180-day transition period, arguing that § 109 constituted an authorization to continue bulk collection during that

---

[1] As the Act was enacted on June 2, 2015, the effective date for §§ 101–103 became November 29, 2015.

period to "allow for the orderly termination" of that collection.  See Mem. of Law
at 5, In re Application of the FBI for an Order Requiring the Production of
Tangible Things, No. BR 15-75 (FISA Ct. June 2, 2015).  On June 29, the FISC
granted the June 2 application of the government to continue the bulk data
collection for the 180-day period.  Opinion & Order, In re Application of the FBI
for an Order Requiring the Production of Tangible Things, No. BR 15-75 (FISA Ct.
June 29, 2015).

On June 9, this Court  directed the parties to submit supplemental briefs
regarding the effect of the Freedom Act on the case, and in particular whether
any or all of Appellants' claims had been rendered moot as a result of that
legislation.  We further ordered that the issuance of the mandate in this action be
stayed pending the parties' supplemental briefing.  Appellants responded to this
order by moving for a preliminary injunction to halt the telephone metadata
program, during the pendency of this suit, with regards to themselves, and
requesting that the case be remanded to the district court for further
consideration and the entry of final relief.

## DISCUSSION

## I.  **Mootness**

Appellants seek, through a preliminary injunction during the pendency of this suit, to bar the government from collecting Appellants' call records under the telephone metadata program, to require the government to quarantine all of Appellants' call records already collected under the program, and to prohibit the government from querying metadata obtained through the program using any phone number or other identifier associated with them.  They also ask the Court to remand the case so that the district court may grant the final relief they seek, to end the bulk telephone metadata program, and purge the records collected unlawfully.  These requests assume that their claims are not moot.

First, Appellants ask us to enjoin the government from continuing to collect and query their call detail records during the 180-day transition period. Appellants argue, and the government concedes, that these claims are not moot, because a decision to grant a preliminary injunction on behalf of the plaintiffs by this Court would have effect, at least until November 29.  Therefore, Appellants' request for relief to halt the collection and querying of Appellants' records during the 180-day transition period is not moot.

11

Appellants and the government disagree, however, regarding the

mootness of the final relief requested after November 29: an injunction that

would require the government to end the telephone metadata program and

purge records collected unlawfully.  Appellants argue that the government

intends to retain the records "indefinitely," and are under no outside obligation

to purge them, and thus that their claims for relief will not become moot on

November 29.  The government argues that the claims will be moot on November

29, because the telephone metadata program will cease at that time, and an order

enjoining the telephone metadata program will have no effect.

Further, the government notes that the Office of the Director of National

Intelligence has announced that the government will not use § 215 data for law

enforcement or investigatory purposes after November 29.  <u>See</u> Statement by the

ODNI on Retention of Data Collected Under Section 215 of the USA PATRIOT

Act (July 27, 2015).  Additionally, the government states that it will destroy all

records as soon as possible after the government's litigation-preservation

obligations end, <u>id</u>., and thus Appellants' requests that their information no

longer be queried and that their records be purged will also be moot.

However, Appellants have asked us to remand to the district court for

12

consideration of its final relief, and relief after November 29 is not requested

under the preliminary injunction.  Whether a federal court has the authority to

order the government to purge records, and which if any of Appellants' claims

become moot on November 29, are questions for the district court.  See e.g., Doe

v. Gonzalez, 449 F.3d 415, 419 (2d Cir. 2006) (remanding to allow the district

court to address constitutional questions in the first instance following legislative

revision of the statute at issue); Cf. Lewis v. Continental Bank Corp., 494 U.S. 472,

482 (1990) ("[I]n instances where the mootness is attributable to a change in the

legal framework governing the case, and where the plaintiff may have some

residual claim under the new framework that was understandably not asserted

previously, our practice is to vacate the judgment and remand for further

proceedings in which the parties may, if necessary, amend their pleadings or

develop the record more fully.").  The claims for which Appellants now seek a

preliminary injunction are not moot, at least at this time, as the government

concedes.  We therefore proceed to determine whether Appellants are entitled to

such an injunction.

II.     **Preliminary Injunction**

        A preliminary injunction is an equitable remedy and an act of discretion by

13

the court.  A party seeking a preliminary injunction must generally show a

likelihood of success on the merits, a likelihood of irreparable harm in the

absence of preliminary relief, that the balance of equities tips in the party's favor,

and that an injunction is in the public interest.  Winter v. NRDC, 555 U.S. 7, 20

(2008).

Appellants argue that they are likely to succeed on the merits, because this

Court earlier held that the telephone metadata program was not authorized by

§ 215, which the Freedom Act leaves in place as the governing law for the 180-

day transition period, and that they will suffer irreparable injury, because

irreparable harm is presumed where there is an alleged deprivation of

constitutional rights.  Statharos v. New York City Taxi & Limousine Comm'n, 198

F.3d 317, 322 (2d Cir. 1999).  Even if this presumption does not apply, they argue,

the continuation of the telephone metadata program means the continuation of

the government's intrusion into Appellants' private communications.  They

argue that the government will not be unduly harmed by the narrow preliminary

injunction as to their records that they request at this time.

First, we must determine whether the Freedom Act authorizes the

continuation of the bulk telephone metadata collection program during the 180-

day transition period.  Appellants argue that the transition period cannot

authorize the use of bulk collection, because we earlier found that the plain

language of the statute did not authorize it, and Congress did not change the

language for the duration of the 180-day period.  The government argues that, in

context, the inclusion of a 180-day delay can only mean that Congress intended to

allow the telephone metadata program to continue during the transition period,

in order to facilitate the orderly transition to the new, targeted surveillance

regime.

Certainly it is true that if statutory language is plain, we must enforce it

according to its terms.  Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251

(2010).  However, "when deciding whether the language is plain, we must read

the words in their context and with a view to their place in the overall statutory

scheme."  King v. Burwell, 135 S. Ct. 2480, 2489 (2015) (internal quotation marks

omitted).  We must also strive to avoid interpretations of a statute that would

render any phrase or provision superfluous.  TRW Inc. v. Andrews, 534 U.S. 19,

31 (2001).

Appellants note that we earlier held that a decision by Congress to

authorize such surveillance must be "expressed in unmistakable language."

<u>Clapper</u>, 785 F.3d at 818.  They argue that because Congress left the language of the Act unchanged during the transition period, the surveillance must remain unauthorized.  Because Congress was legislating, as the ACLU puts it, "in the shadow of this Court's May 7 opinion," it could only have meant, by delaying the effective date of §§ 101–103, to legislatively ratify our understanding of the statute as not authorizing bulk collection.  <u>Motion & Brief for Appellants</u> at 10.  While this line of reasoning has some surface appeal, we must disagree.

To argue that the plain language of the present statute is clear based on its previous form is spurious.  Congress passed the Freedom Act in part to prohibit bulk telephone metadata collection, and in doing so endorsed our understanding of the key term "relevance."  <u>See</u> H.R. Rep. No. 114-109, at 19.  Contrary to Appellants' assertion, the language of the Act as a whole has *not* remained unchanged.  The statute has been amended in several important respects, including to prohibit bulk telephone metadata collection, with a provision delaying that effective date by 180 days.  That is far from a mere reenactment that fails to give a clear indication that Congress made an affirmative decision regarding its intention.

In the same passage of our prior opinion noting the requirement of "unmistakable language," we further noted that we would expect a decision by Congress whether to authorize a program such as the bulk telephone metadata collection to be "preceded by substantial debate." Clapper, 785 F.3d at 818. That debate has now unquestionably occurred. Unlike previous extensions of the Patriot Act, the Freedom Act was the result of more than two years of discussion and debate by Congress over the proper scope of bulk data collection under § 215. While the present Congress cannot tell us what the Congress that passed the Patriot Act intended to authorize, its intent in passing the Freedom Act is clear. The 180-day transition period represents Congress's considered judgment that there should be time for an orderly transition from the existing program to the new, targeted surveillance program. That orderly transition requires that the government retain the tools it has been using to investigate threats of foreign terrorism until new tools may be put in place. We agree with the government that Congress reached a compromise, supported by the President: to end the telephone metadata program, but to allow for a 180-day transition period. The intention of the democratically elected branches of government is thus clear.

17

Looking to the legislative history, which is informative though not decisive, the discussions regarding the 180-day transition period lend credence to this compromise. First, Congress had before it the government's representations that the NSA's transition to the new model of targeted production would require time to be "fully operational." 161 Cong. Rec. S3275 (daily ed. May 22, 2015) (statement of Sen. Leahy) (quoting letter from National Security Agency Director). Second, there was explicit debate in Congress as to the exact length of the transition period. Some members of Congress desired a longer transition period to "make sure the technology is in place for this program to continue." See 161 Cong. Rec. S3391 (daily ed. June 1, 2015) (statement of Sen. Burr). Other members preferred to keep the transition period to 180 days, and explicitly rejected proposals to "include a provision to keep the bulk collection program in place for more than two years" because the "NSA Director stated . . . that the NSA only needs 180 days to transition to the new targeted program." 161 Cong. Rec. S3275 (daily ed. May 22, 2015) (statement of Sen. Leahy). A "shared premise" of Congress in debating the length of the transition period, the government argues, was that the bulk collection would continue during the transition period. Brief for Appellees at 9.

18

Appellants point to no evidence in the legislative history to support the contrary proposition that Congress intended to ban bulk telephone metadata collection immediately, despite including explicit language in the statute delaying the effect of its prohibition of the prior program for 180 days. Appellants argue weakly that the clarification of "relevance" is meant to end the telephone metadata program immediately. The committee report on the Freedom Act states that "Congress' decision to leave in place the 'relevance' standard for Section 501 orders should not be construed as Congress' intent to ratify the FISA Court's interpretation of that term." H. R. Rep. No. 114-109, at 18-19. To explain the later effective date of §§ 101–103 provided by § 109, Appellants argue that it is "best understood as Congress's effort to ensure that bulk collection would end no matter how courts ultimately understood the concept of 'relevance.'" Reply Brief for Appellants at 6. However, there is not one iota of evidence that this complicated rationale was the reason for the later effective date, nor have Appellants pointed us to any evidence to demonstrate that any member of Congress intended or believed that bulk collection would end the day the bill was passed.[2] Further, the "relevance" language remains in

_____

[2] While not specifically treated as a canon of statutory interpretation, Occam's razor is apropos here. See, e.g., Oxford English Dictionary (3d Ed. 2004)

the statute as amended after the 180-day transition period, and thus we agree with the government that the clarification of the relevance standard, like the other amendments to the telephone metadata program, is meant to apply to the statute after the 180-day transition period.

Most convincingly, the government argues that the language of FISA, as amended by the Freedom Act, demonstrates that Congress intended for the telephone metadata program to continue during the transition period. That Congress did not change the language of § 215 must be viewed in the context of the larger changes to the statute. See King v. Burwell, 135 S. Ct. at 2489. The Freedom Act made many amendments to FISA, including banning other types of bulk collection, such as that for pen registers and trap and trace orders,[3] but enacted no such transition provision as that in § 109 to delay the effect of other bans on bulk collections. It makes no sense to conclude that Congress, while providing for the immediate effect of other amendments, also intended for bulk

---

(defining Occam's razor as "[t]he principle . . . that in explaining anything, no more assumptions should be made than are necessary.").

[3] H.R. Rep. No. 114-109, at 21 ("[Section 201] prohibits the use of the pen register and trap and trace device authority for bulk collection by requiring each application under this section to include a specific selection term as the basis for the use of a pen register or trap and trace device.").

telephone metadata collection to end immediately, by including language that those provisions not take effect for 180 days.

Finally, giving immediate effect to the ban on bulk telephone metadata collection would render the language of § 109 superfluous.  See TRW, 534 U.S. at 31.  Appellants' tenuous argument that the clarification of the relevance standard was meant to take effect in the meantime, with the final ban merely sealing the deal, is unconvincing.  If Congress had intended to end bulk collection on June 2, it would have simply said so, or at least, as in the remainder of the Freedom Act, said nothing to the contrary.  The language of § 215 as amended by the Freedom Act indicates that Congress intended the telephone metadata program to continue during the transition period.

Regardless of whether the bulk telephone metadata program was illegal prior to May, as we have held, and whether it would be illegal after November 29, as Congress has now explicitly provided, it is clear that Congress intended to authorize it during the transitionary period.  Our interpretation of § 215 as amended by the Freedom Act leads us to conclude that, at this point, Appellants have not shown a likelihood of success on the merits.  See Winter, 555 U.S. at 20. We therefore reject Appellants' argument that the government should be

enjoined on the ground that the bulk telephone metadata program continues to

be unauthorized by statute.

## III.   Constitutional Issues

Appellants argue that if we decide, as we now have, that Congress allowed

the telephone metadata program to continue during the 180-day transition

period, we must reach the "vexing" constitutional issues we earlier avoided:

whether § 215 violates Appellants' rights under the Fourth and First

Amendments to the Constitution.  The question posed by Appellants invokes one

of the most difficult issues of modern jurisprudence: whether modern technology

changes traditional and reasonable expectations of privacy.  The Fourth

Amendment issue raised here, as we noted earlier, is a "dispute [that] touches an

issue on which the Supreme Court's jurisprudence is in some turmoil."[4]  Clapper,

785 F.3d at 821.  Whatever we might ultimately conclude about the Constitution's

---

[4] Appellants contend that the seizure of their telephone records violates their
reasonable expectation of privacy.  Katz v. United States, 389 U.S. 347 (1967).  The
government invokes the third-party doctrine of Smith v. Maryland, 442 U.S. 735,
743–44, to assert that Appellants have no privacy rights in the records, because
telephone metadata is voluntarily turned over to third-party phone providers.
While we noted earlier that "in today's technologically based world, it is virtually
impossible for an ordinary citizen to avoid creating metadata about himself on a
regular basis simply by conducting his ordinary affairs," Clapper, 785 F.3d at 794,
we need not decide today the relationship between changing expectations of
privacy and third-party providers.

22

demands in such a novel and contentious area, it is, at a minimum, difficult to conclude that Appellants are "likely to succeed" in arguing that new conditions require a reconsideration of the reach of a long-established precedent.

The government urges us not to reach these issues, because we should respect the judgment of the democratically elected branches of government to dismantle the program in a way that heeds national security concerns. We agree with the government that we ought not meddle with Congress's considered decision regarding the transition away from bulk telephone metadata collection, and also find that addressing these issues at this time would not be a prudent use of judicial authority. We need not, and should not, decide such momentous constitutional issues based on a request for such narrow and temporary relief.[5] To do so would take more time than the brief transition period remaining for the telephone metadata program, at which point, any ruling on the constitutionality of the demised program would be fruitless.

Appellants reanimate their earlier arguments without heed to the drastically different context in which they now arise. The question is not whether

---

[5] The Supreme Court declined to resolve a similar question in United States v. Jones, 132 S. Ct. 945, 951–53 (2012), deciding the issue presented on a technical trespass theory rather than deciding whether the use of modern technology required a change in existing doctrine regarding expectations of privacy.

23

Congress may constitutionally authorize this type of bulk data collection indefinitely, but whether Congress may, in dismantling a program of this type, authorize a transitional period with a clear end point. Allowing the program to remain in place for the short period that remains at issue is the prudent course. Such a transitional period would likely have been appropriate even had we held § 215 unconstitutional in our earlier decision in the instant matter.[6]

Congress has decided, after nearly two years of debate, that this type of data collection shall not be authorized in the future. An abrupt end to the program would be contrary to the public interest in effective surveillance of terrorist threats, and Congress thus provided a 180-day transition period. Under the circumstances, we will defer to that reasonable decision.

## CONCLUSION

Congress reacted to growing privacy concerns by passing the Freedom Act and ending the bulk telephone metadata collection program, and transitioning to a new targeted surveillance program aimed at protecting the United States from foreign terrorism. What if any legal challenges arise from the new system have

---

[6] Indeed, Appellants themselves did not seek relief until nearly one third of the period had elapsed, and only after we had raised the question of mootness and solicited further briefing.

yet to be seen.  Congress has balanced privacy and national security by providing for a 180-day transition period, a decision that it is uniquely suited to make. Congress's decision to do so should be respected.

For the foregoing reasons, we conclude that § 215 authorizes the telephone metadata collection program for the period of 180 days from the Freedom Act's enactment, as part of a larger move to dismantle the program.  We decline to reach the constitutional issues, and deny a preliminary injunction at this time, as the effect would be limited to the time before November 29, when the nature of the harm complained of by Appellants will change, and would require resolving momentous Constitutional issues.  We do not address whether Appellants' claims will become moot on November 29, and leave this, and all other remaining questions, to the district court in the first instance.  Accordingly, we DENY the motion for a preliminary injunction and REMAND the matter for further proceedings in the district court consistent with this opinion and our prior opinion in this case.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

25